IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ATLANTIC SPECIALTY INSURANCE
COMPANY, et al.,

    Plaintiffs,

v.

MIDWEST CRANE REPAIR, LLC,

    Defendant.

Case No. 20-4013-JAR-ADM

**MEMORANDUM AND ORDER**

This case arises out of the collapse of a Terex American HC165 boom crane ("Terex crane") at a construction site in Fredonia, Kansas, after the boom hoist wire rope failed. Plaintiff Crossland Heavy Contractors, Inc. ("Crossland Heavy") owns the crane and is insured by plaintiff Atlantic Specialty Insurance Company ("Atlantic"). After the collapse, Atlantic reimbursed Crossland Heavy for damages to a building that was under construction at the site, as well as the Terex crane, related equipment, and expenses. In this lawsuit, Atlantic and Crossland Heavy seek to recover from defendant Midwest Crane Repair, LLC ("Midwest Crane") for its alleged negligence in inspecting the crane, which they contend caused the crane to collapse.

This case is now before the court on two motions to compel. First, plaintiffs ask the court to compel Midwest Crane to produce written statements that its owner Jonathan Henry and other Midwest Crane employees or representatives gave to the Occupational Safety and Health Administration ("OSHA") when OSHA investigated the crane collapse. (ECF 87.) As explained below, the extent to which these OSHA statements are in Midwest Crane's possession, custody, or control is unclear. To the extent that they *are not* in Midwest Crane's possession, custody, or control, plaintiff's motion is denied because Midwest Crane has no obligation to produce them

under the Federal Rules of Civil Procedure.  However, the court rejects Midwest Crane's assertion that it is entitled to assert any "privilege" or exemption that OSHA may have to withhold such documents.  Only OSHA would be entitled to assert any such privilege or exemption and only with respect to documents in OSHA's possession—for example, in response to a Freedom of Information Act ("FOIA") request.  So plaintiffs' motion is granted to the extent that any such documents are in Midwest Crane's possession, custody, or control because Midwest Crane cannot assert OSHA privileges or exemptions over those documents.

In the second motion, Midwest Crane seeks to compel Crossland Heavy to produce documents relating to another crane that Crossland Heavy owns, a Grove TMS 9000E crane ("Grove crane").  (ECF 88.)  Midwest Crane contends these documents bear on the issue of causation because they will show Crossland Heavy's practices in failing to properly maintain and repair its cranes, including not following Midwest Crane's recommendations.  The court agrees that these documents are relevant, and further finds that plaintiffs have not established that producing these documents would be unduly burdensome or disproportionate to the needs of the case.  Accordingly, Midwest Crane's motion to compel is granted.

## I. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1). In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No.

15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies).

When a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel. FED. R. CIV. P. 37(a). The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting the amendment "does not place on the party seeking discovery the burden of addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance is often apparent on the face of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652-53 (D. Kan. 2006). When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012

3

WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

## II. PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF THE OSHA STATEMENTS

When OSHA investigated the Terex crane collapse, it obtained a written statement from Midwest Crane owner Jonathan Henry. Plaintiffs now ask the court to compel Midwest Crane to produce Mr. Henry's statement, as well as "any statements provided to OSHA by any other owners, employees or representatives of Midwest [Crane], to the extent they exist." (ECF 87, at 3.)

### A. Midwest Crane Has No Obligation to Produce OSHA Statements That Are Not Within Its Possession, Custody, or Control

Midwest Crane contends that Mr. Henry's OSHA statement is not in its possession, custody, or control. During Mr. Henry's deposition, plaintiffs' counsel asked for a copy of the statement. (ECF 87-1, at 4.) Midwest Crane's counsel stated that he did not have the statement and that Mr. Henry might have a copy, but Midwest Crane would not produce the statement anyway because it is protected by an "OSHA privilege." (*Id.*) Now, Midwest Crane contends that it does not have a copy because when OSHA responded to Midwest Crane's FOIA request, OSHA withheld the statement and produced only a coversheet. (ECF 90, at 5; 90-6 (coversheet).) But plaintiffs point out that Midwest Crane listed Mr. Henry's statement on its privilege log. (ECF 93-2, at 6.) Consequently, it appears that Midwest Crane may have a copy of the statement because

4

a party would ordinarily only include documents on a privilege log that it is withholding.  *See* FED. R. CIV. P. 26(b)(5)(A) (requiring a privilege log when a party "withholds" information that is otherwise discoverable).  But Midwest Crane still states that it does not have a copy, despite including the document on its privilege log.

The Federal Rules of Civil Procedure require a party responding to a request for production to produce documents in the responding party's "possession, custody, or control."  *See* FED. R. CIV. P. 34(a)(1).  Here, it is unclear whether Mr. Henry's OSHA statement is within Midwest Crane's possession, custody, or control.  It is incumbent upon Midwest Crane to determine whether the OSHA statement is within its possession, custody, or control because, by signing a discovery response that states whether Midwest Crane has the document, counsel certifies that the response is consistent with the applicable rules and warranted by existing law.  FED. R. CIV. P. 26(g)(1)(B).  Counsel's signature will certify that the attorney has made a reasonable effort to assure that the clients have provided all responsive information and documents that are available to them.  *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) (citing FED. R. CIV. P. 26(g), advisory committee's note to the 1983 amendment).

To the extent that counsel determines Mr. Henry's statement is not in Midwest Crane's possession, custody, or control, plaintiffs' motion is denied.  It is well settled that parties cannot be compelled to produce documents that are not within their possession, custody or control.

**B.    Midwest Crane is Not Entitled to Withhold Documents in Its Possession, Custody, or Control Based on An OSHA Privilege or Exemption**

To the extent that Midwest Crane determines that Mr. Henry's statement is within its possession, custody, or control, the court must address Midwest Crane's argument that it is entitled to withhold the document based on some form of OSHA privilege or exemption.  In particular,

Midwest Crane argues that Mr. Henry's statement is protected by an informant's privilege, is confidential, and/or is subject to FOIA exemptions preventing its disclosure. (ECF 90, at 2.)

Midwest Crane's argument is without merit. Midwest Crane cites no authority to support the proposition that a party in a civil case can assert a privilege claim over OSHA materials. Authority is to the contrary. *See Woods v. Amazon.com, LLC*, No. 17 C 4339, 2019 WL 2323874, at \*16 (N.D. Ill. May 30, 2019) (stating only the government may invoke a privilege claim over OSHA materials); *see, e.g.*, *Fermaintt v. McWane, Inc.*, 2008 WL 11383665, at \*6 (D.N.J. Dec. 17, 2018) (assessing OSHA's assertion of the deliberative process privilege). For example, Midwest Crane confuses the issue by intermingling its OSHA "privilege" claim with its discussion about plaintiffs' FOIA request. But FOIA "provide[s] a public right of access, enforceable in federal court, to *agency* records." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225 (10th Cir. 2007) (emphasis added). This is not a FOIA case in which plaintiffs are seeking records directly from OSHA. And even if the OSHA documents were "exempt from disclosure to the general public under FOIA, it does not automatically follow the information is privileged . . . and thus not discoverable in civil litigation." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984).

Accordingly, Midwest Crane has asserted no valid basis to withhold Mr. Henry's statement if it is in Midwest Crane's possession, custody, or control. To that extent, plaintiffs' motion is granted.

### C. Midwest Crane Must Produce Other OSHA Statements in Its Possession, Custody, or Control

Plaintiffs also ask the court to compel Midwest Crane to produce "any statements provided to OSHA by any other owners, employees or representatives of Midwest [Crane], to the extent they exist." (ECF 87, at 3.) The parties do not present any separate arguments as to these

6

documents. The court therefore will grant plaintiffs' motion as to these documents to the same extent as discussed above. In other words, Midwest Crane must produce any other statements that its company owners, employees, or representatives provided to OSHA that are in Midwest Crane's possession, custody, or control. To the extent that Midwest Crane does not have such documents in its possession, custody, or control, plaintiffs' motion is denied.

### III. MIDWEST CRANE'S MOTION TO COMPEL PRODUCTION OF THE GROVE CRANE DOCUMENTS

Midwest Crane states that, around the time that it inspected the Terex crane, it also inspected twenty-five other cranes for Crossland Heavy, including the Grove crane. (ECF 88, at 2.) Midwest Crane contends that only six cranes passed inspection and that the Terex crane and the Grove crane failed. Midwest Crane further contends that Crossland Heavy did not repair deficiencies that Midwest Crane had identified. Midwest Crane served three RFPs seeking information on the Grove crane regarding ownership (RFP 21); correspondence, reports, records of inspections, records of maintenance and repairs (RFP 22); and documents reflecting hours of use (RFP 23). (ECF 88-4, at 7.) Atlantic objected to these RFPs on relevance grounds, stating the Grove crane "was not involved in the subject incident."[1] Midwest Crane later agreed to limit the temporal scope of these RFPs to April 1, 2017 through December 7, 2018. (ECF 88-6, at 10-11.) But plaintiffs continued to object to producing responsive documents, so Midwest Crane filed the instant motion asking the court to compel production of documents responsive to RFPs 21-23.

---

[1] Midwest Crane served its RFPs on Atlantic (ECF 88-4), and Atlantic responded on May 8. (ECF 88-5.) Crossland Heavy was added to this case as a plaintiff on May 19. (ECF 31.) Although Crossland Heavy was not yet a plaintiff at the time, Atlantic sought Crossland Heavy's input in responding to the RFPs. (ECF 88-7, at 1.) In plaintiffs' response to Midwest Crane's golden rule letter regarding the RFPs, both plaintiffs maintained the objections Atlantic asserted to RFPs 21-23. (*Id.* at 2.) Both plaintiffs oppose Midwest Crane's motion. (ECF 89.)

### A. Relevance

The court first addresses plaintiffs' relevance objection. Midwest Crane argues the information sought in RFPs 21-23 is relevant to its position that Crossland Heavy would not have repaired the Terex crane prior to the December 2018 accident, even if the damage to the boom hoist wire rope had been present during Midwest Crane's inspection in April 2018 and even if Midwest Crane had reported that damage to Crossland Heavy. (ECF 88, at 5.) Midwest Crane contends that Crossland Heavy has a practice of failing to "timely maintain and repair its cranes" while continuing to put them in service. (*Id.*) Midwest Crane argues that, if Crossland Heavy failed to repair the Grove crane that had issues similar to the Terex crane, that information bears on its defense as well as whether plaintiffs can establish their claims. (*Id.*)

Midwest Crane's explanation meets the threshold showing of relevance, so plaintiffs bear the burden of supporting their relevance objection. Plaintiffs' relevance arguments are premised on the differences between the Terex crane and the Grove crane. Plaintiffs now contend—for the first time—that Crossland Heavy did not own the Grove crane. (ECF 89, at 1.) But Midwest Crane cites sworn testimony given during the OSHA investigation establishing that Crossland Heavy and Crossland Construction, Inc. shared a single department that was responsible for both companies' cranes. (*See* ECF 94-1, at 2-3; ECF 94-2, at 4.) The fact that the Grove crane may have been nominally owned by a related entity does not render the information Midwest Crane seeks irrelevant. And while plaintiffs argue the Grove crane is a different model than the Terex crane with different applications and uses, that it did not have a boom hoist wire rope (the feature of the crane that failed), and that the Grove crane was not involved in the December 2018 accident, plaintiffs do not dispute that Midwest Crane inspected the Grove crane. Midwest Crane contends that Crossland Heavy was negligent in, among other things, failing to inspect, maintain, and/or

8

repair the Terex crane and the boom hoist wire rope.  Midwest Crane says the crane wire was not damaged when it inspected the crane eight months before the collapse, that it did not issue an annual certification of inspection regardless because the crane failed the inspection, and that OSHA investigated the accident and cited Crossland for failing to properly repair and inspect the crane.  Midwest Crane contends that OSHA issued citations to Crossland Heavy relating to the failure to repair and also found that Crossland Heavy did not perform required daily/monthly inspections of the Terex crane's boom hoist wire rope.  (*Id.*)  The court agrees that, if Crossland Heavy's crane department likewise failed to correct issues with the Grove crane, that may bear on causation and contributory negligence with respect to the Terex crane.

Plaintiffs argue that discovery relating to the Grove crane is not relevant under FED. R. EVID. 401.  (ECF 89, at 7.)  But information within the scope of discovery under Rule 26(b)(1) "need not be admissible in evidence to be discoverable."  "[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" will be deemed relevant.  *Oppenheimer*, 437 U.S. at 351.  That documents relating to the Grove crane may not be deemed relevant under Rule 401 is not determinative as to whether they fall within the scope of discovery allowed under Rule 26(b)(1).  The court finds that plaintiffs have not met their burden to support their relevance objection, so the court overrules this objection.

### B.     **Proportionality**

Plaintiffs primarily argue that Midwest Crane's motion should be denied because discovery into the Grove crane is not proportional to the needs of the case.  (ECF 89, at 3-8.)

#### 1.     **Legal Standard**

Rule 26(b)(2)(C) requires that "the court must limit the frequency or extent of discovery" if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or

can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C). This rule incorporates the Rule 26(b)(1) proportionality standard, which the court should always consider in resolving discovery disputes. FED. R. CIV. P. 26 advisory committee's notes to the 2015 amendment (stating that the court has a "responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes"); *see also, e.g.*, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) ("Fed. R. Civ. P. 26(b)(2)(C) cautions that all permissible discovery must be measured against the yardstick of proportionality.").

When evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The party resisting discovery on proportionality grounds still bears the burden to support its objections. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties...."); *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017) ("The party resisting discovery bears the burden to support its objections based upon proportionality[.]"). The practical effect of the rule is that both parties must typically provide information pertinent to the proportionality analysis. *See In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 565 (D. Ariz. 2016); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment ("The

parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."). This is because

> [a] party claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis." *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).

### 2. Analysis of Proportionality Factors

In a case seeking damages, the first proportionality factor requires the court to look at whether the issues at stake implicate broader "public policy spheres, such as employment practices, free speech, and other matters [that] may have importance far beyond the monetary amount involved," or if the claims seek to "vindicate vitally important personal or public values." FED. R. CIV. P. 26(b)(1) advisory committee notes to the 2015 amendments. This matter involves negligence claims. The function of negligence tort includes a deterrence component, *i.e.* deterring negligent behavior that might injure others and encouraging actors to comply with applicable duties of care. *See* GARY T. SCHWARTZ, MIXED THEORIES OF TORT LAW: AFFIRMING BOTH DETERRENCE AND CORRECTIVE JUSTICE, 75 Tex. L. Rev. 1801, 1828-33 (1997) (discussing deterrence rationales behind tort law). But this is ultimately a case involving private parties disputing whose alleged negligence resulted in the crane collapse. This factor is neutral.

Turning next to the amount in controversy, courts compare the cost of the discovery at issue to the amount in controversy. *Oxbow Carbon*, 322 F.R.D. at 7. Atlantic seeks $683,724.38 in damages and Crossland Heavy seeks $191,019.80. (ECF 89, at 4.) Plaintiffs argue they have already produced over 12,000 pages of documents, at "staggering" time and expense, and cite invoices showing that they spent approximately $2,000 in vendor fees related to this prior production. (*Id.* at 5; ECF 89-2.) Plaintiffs provide no information regarding the estimated cost of providing discovery about the Grove crane. The amount plaintiffs have incurred so far is hardly "staggering." Given that Midwest is seeking discovery that is limited in scope to documents relating to a single crane dating from April 1, 2017 to December 7, 2018, plaintiffs have not established that this factor supports their position.

The court turns to the parties' relative access to relevant information. "In considering this factor, courts look for 'information asymmetry'—a circumstance in which one party has very little discoverable information while the other party has vast amounts of discoverable information." *Oxbow Carbon*, 322 F.R.D. at 8 (quoting FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment). "[T]he burden of responding to discovery lies heavier on the party who has more information, and properly so." FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Here, although Midwest Crane would have some information on the Grove crane related to its inspections, Crossland Heavy is the party with access to documents reflecting its ownership, hours of use, correspondence, reports, and inspection, maintenance, and repair records. This factor weighs in favor of allowing the discovery Midwest Crane seeks.

The fourth factor requires the court to evaluate the parties' resources. "[C]onsideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party." FED. R. CIV. P. 26(b)(1)

advisory committee's note to the 2015 amendment; *see also Nyberg*, 2016 WL 11671468, at *4 (noting that "consideration of the parties' resources 'does not . . . justify unlimited discovery requests addressed to a wealthy party'"). Courts must apply the proportionality factors "in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Plaintiffs admit that the parties here are similarly situated. This factor is neutral.

In analyzing the importance of the discovery in resolving the issues, the court looks to whether the discovery seeks information on issues "at the very heart of [the] litigation." *Oxbow Carbon*, 322 F.R.D. at 8 (alteration in original). "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. 26(b)(1) advisory committee notes to the 2015 amendment. As discussed above, Midwest Crane has established that the requested discovery bears on causation and contributory negligence, which are key issues in the case. Plaintiffs argue that discovery into other cranes is not probative with respect to the Terex crane collapse. But that argument is more suited to assessing the evidentiary value at trial, not whether Midwest Crane is entitled to this discovery. This factor weighs in favor of discovery.

The final factor in the proportionality analysis is "whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "A party claiming undue burden or expense ordinarily has far better information -- perhaps the only information -- with respect to [this] part of the determination." FED. R. CIV. P. 26(b)(1) advisory committee notes to the 2015 amendment. Here, plaintiffs generally argue that "[t]he substantial burden and expense to Plaintiffs in producing documents related to other cranes vastly outweighs [the proposed

discovery's] potential benefit, if any." (ECF 89, at 8.)  But Midwest Crane is not seeking discovery on every other crane, just the Grove crane.  Plaintiffs have not provided any specific information to establish that the burden and expense associated with producing documents relating to a single crane, limited to a time frame of April 1, 2017 through December 7, 2018, will be substantially burdensome.  This factor also weighs in favor of allowing the discovery Midwest Crane seeks.

In sum, discovery regarding the Grove crane is relevant and proportional to the needs of the case.  Midwest Crane's motion is therefore granted.

\* \* \* \* \*

**IT IS THEREFORE ORDERED** that plaintiffs Atlantic Specialty Insurance Company and Crossland Heavy Contractors, Inc.'s Motion to Compel Defendant's Statement to OSHA (ECF 87) is granted in part and denied in part as set forth above.  Midwest Crane must produce the OSHA statements in its possession, custody, or control by **September 16, 2020.**

**IT IS FURTHER ORDERED** that defendant Midwest Crane Repair, LLC's Motion to Compel Crossland Heavy Contractors, Inc. to Produce Documents (ECF 88) is granted.  Plaintiffs must produce all documents responsive to RFPs 21-23, dating from April 1, 2017, through December 7, 2018, by **September 16, 2020.**

**IT IS FURTHER ORDERED** that defendant Midwest Crane Repair, LLC's Motion for Leave to File Sur-Reply and Request for Hearing Regarding Plaintiff's [sic] Motion to Compel Defendant's Statement to OSHA (ECF 96) is denied.

**IT IS SO ORDERED.**

Dated August 31, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge