## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, as Subrogee of Crossland Heavy Contractors, Inc., and CROSSLAND HEAVY CONTRACTORS, INC., | |
| **Plaintiffs,** | Case No. 20-CV-04013-JAR-ADM |
| **v.** | |
| MIDWEST CRANE REPAIR, LLC, | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiffs Atlantic Specialty Insurance Company ("Atlantic") and Crossland Heavy

Contractors, Inc. ("Crossland") bring this negligence action against Defendant Midwest Crane

Repair, LLC ("Midwest Crane"), arising out of a crane collapse on December 7, 2018.  Plaintiffs

seek reimbursement for damages caused to a building, the crane, and other equipment.  Midwest

Crane answered and asserted two counterclaims against Crossland seeking: (1) a declaratory

judgment "of the obligations, legal relations, and rights of the parties, including a declaration that

Crossland Heavy is responsible in whole or in part for the damage claimed as a result of the

December 7, 2018 crane collapse"; and (2) contribution and indemnity.  Before the Court is

Crossland's Motion to Dismiss Midwest Crane Repair, LLC's Counterclaims (Doc. 70).  The

motion is fully briefed and the Court is prepared to rule.  As described more fully below, the

Court grants Crossland's motion to dismiss Midwest Crane's counterclaims.

## I.      Background

On December 7, 2018, a 240 foot, Terex American HC165 boom crane collapsed at the Public Wholesale Water Supply District No. 23 construction site, located at 7436 1000 Road, Fredonia, Kansas.  The boom hoist wire rope for the crane failed.  The rope had been subjected to serial bending over the sheaves of the boom hoist system.  Such bending resulted in bending fatigue which was evident by the appearance of wire breaks on the rope.  Crossland was a contractor for the construction project and owned the crane.  Midwest Crane inspected the crane on April 19, 2018.

When the crane failed, it collapsed onto a building that was under construction.  It also killed Jacob Jeffrey, who was working at the jobsite installing trusses.  Jeffrey was an employee of Burkhart Construction.  A suit has been filed and a claim has been made against Midwest Crane in Missouri state court for the wrongful death of Jeffrey; Crossland is not a party to that action, which remains pending.

After the crane accident, Atlantic reimbursed its insured, Crossland, for damages to the building, as well as damages to the crane, related equipment, and expenses.  In this action, Atlantic is subrogated to its insured's claim for property damages against Midwest Crane.  Crossland also claims "additional, uninsured damages as a result of" the crane collapse, asserting a negligence claim under Kansas law against Midwest Crane on the grounds that Midwest Crane owed a duty to exercise reasonable care in inspecting the crane and to remove any damaged parts from service.

Midwest Crane asserts in its Answer that Crossland was responsible for monthly and daily crane inspections after its April 2018 annual inspection, and that those monthly or daily inspections should have revealed the issues that caused the crane's collapse.  Midwest Crane

further alleges that Crossland failed to correct deficiencies that Midwest Crane identified in April 2018.  Defendant alleges two counterclaims against Crossland seeking: (1) a declaration "of the obligations, legal relations, and rights of the parties, including a declaration that Crossland Heavy is responsible in whole or in part for the damage claimed as a result of the December 7, 2018 crane collapse";[1] and (2) indemnity and contribution.

## II.    Standards

Crossland moves to dismiss Midwest Crane's counterclaims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Crossland argues that the Court lacks subject matter jurisdiction over the declaratory judgment claim, and that the indemnity and contribution claim is not ripe for review, and thus not justiciable.  Ripeness "present[s] the threshold jurisdictional question of whether a court may consider the merits of a dispute."[2]  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[3]  The "burden of establishing" a federal court's subject-matter jurisdiction "rests upon the party asserting jurisdiction."[4]  Mere conclusory allegations of jurisdiction are not enough.[5]

Crossland also argues for dismissal of both counterclaims on the merits under Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss brought under Rule 12(b)(6), the claim must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

---

[1] Doc. 48 ¶ 50.

[2] *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (citing *Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004)).

[3] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1152 (10th Cir. 2015) (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[4] *Id.* at 1151.

[5] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

level" and must include "enough facts to state a claim for relief that is plausible on its face."[6]  In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[7]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[8]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[9]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[10]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[11]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[12]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[7] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[10] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[11] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[12] *Id.* at 679.

[13] *Id.*

misconduct alleged."[14]

## III.   Discussion

### A.   Declaratory Judgment Counterclaim

Plaintiff seeks dismissal of the declaratory judgment counterclaim, arguing that the Court

lacks subject matter jurisdiction, or alternatively, that the Court should decline to exercise

jurisdiction.  The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought. Any such declaration shall have the force and
> effect of a final judgment or decree and shall be reviewable as
> such.[15]

The Act "enables parties uncertain of their legal rights to seek a declaration of rights prior to

injury."[16]  Although declaratory relief is available to federal litigants under the statute, the statute

itself does not create federal jurisdiction.[17]

If there is an independent basis to assert federal jurisdiction over a declaratory judgment

claim, whether and when to exercise that jurisdiction is a matter within the sound discretion of

the district court.[18]  A district court generally "should not entertain a declaratory judgment action

over which it has jurisdiction if the fact-dependent issues are likely to be decided in another

pending proceeding."[19]  The Tenth Circuit has set forth five factors, often referred to as the

---

[14] *Id.* at 678.

[15] 28 U.S.C. § 2201(a).

[16] *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989) (citations omitted).

[17] *Barr v. United States*, 478 F.2d 1152, 1156 (10th Cir. 1973).

[18] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 289 (1995); *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995).

[19] *Kunkel*, 866 F.2d at 1276.

"*Mhoon* factors," that a court should evaluate in determining whether to exercise jurisdiction over a declaratory judgment action:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more productive.[20]

### 1.    Scope of Declaratory Judgment Counterclaim

Crossland argues that Midwest Crane's declaratory judgment counterclaim seeks two forms of declaratory relief that should be separately analyzed: (1) a determination of the parties' respective rights and obligations relating to property damage from the crane collapse; and (2) a determination of the parties' respective rights and obligations relating to Jeffrey's death.  The first form of declaratory relief is related to Plaintiffs' negligence claims in this case.  The second form of declaratory relief relates to a separate proceeding pending in Missouri state court.  Midwest Crane insists that it does not seek adjudication of the parties' rights in relation to the wrongful death action in Missouri; it maintains that it seeks relief solely as to Crossland.

This contention is belied by several statements in Midwest Crane's Answer and legal positions in its response brief.  For example, Midwest Crane explicitly alleges that it "may be required to pay damages that are attributable to Crossland Heavy related to the death of Jacob Jeffrey," and that by seeking recovery against Midwest Crane, Crossland is estopped from asserting "claimed immunity or legal protections, including but not limited to any claimed

---

[20] *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

workers' compensation immunity."[21]  Of course, workers' compensation immunity has no bearing on the negligence claim for property damages in this case; it could only be asserted as a defense to the wrongful death claim.  And, most directly, Midwest Crane pleads: "Midwest Crane requests a declaration that Crossland Heavy was solely responsible for, or in the alternative, proportionately responsible for the December 7, 2018 crane accident and the damages alleged by Crossland Heavy, Atlantic Specialty, *and related to the death of Jacob Jeffrey*."[22]

Despite insisting that it does not seek adjudication of rights and obligations with respect to the wrongful death action, Midwest Crane contests in its response brief Crossland's grounds for dismissing such a claim.  Midwest Crane cannot have it both ways.  Because the counterclaim as alleged in the Answer suggests that Midwest Crane indeed seeks relief from Crossland to the extent Midwest Crane is deemed liable in the wrongful death action, the Court addresses the counterclaim accordingly and will separately analyze jurisdiction for declaratory relief regarding property damage and wrongful death because there are separate pending proceedings relating to these tort claims.

### 2.    Declaratory Relief as to Property Damage

Crossland first argues that the declaratory judgment counterclaim should be dismissed to the extent it seeks adjudication of the parties' rights and obligations relating to property damage because it is redundant of Crossland's negligence claim and Midwest Crane's comparative fault affirmative defense, which will determine liability and the comparative fault of the parties with respect to property damages that flow from the crane collapse.  Crossland's negligence claim

---

[21] Doc. 48 ¶¶ 39–40.

[22] *Id.* ¶ 47 (emphasis added).

presents factual questions as to whether Midwest Crane breached a duty to Crossland by failing to repair the crane after inspecting it in April 2018.  As a defense, Midwest Crane denies that it breached any duty owed to Crossland because there was no ascertainable damage to the rope at the time of its April 2018 inspection.  It claims comparative fault under K.S.A. § 60-258a, arguing that Crossland was negligent for violating OSHA standards and regulations that applied to the crane's maintenance as the owner of the crane.  Thus, the fact finder in this matter must decide whether Crossland has established the elements of its negligence claim, and it must decide whether any other party, including Crossland, caused or contributed to the cause of the crane collapse.

Courts sometimes dismiss "mirror image" counterclaims on the basis that liability will be resolved based on the claims asserted in the Complaint.[23]  Indeed "courts in this circuit have also dismissed declaratory judgment claims in circumstances similar to those presented here—where a plaintiff seeks declaratory relief that would resolve the same issues raised by other claims brought in the same action."[24]  But "a counterclaim seeking a declaratory judgment is not duplicative or redundant if it asserts an independent case or controversy which would remain viable after a dismissal of the plaintiff's claim."[25]

The Court agrees with Crossland that the counterclaim is redundant, and thus, the *Mhoon* factors counsel in favor of declining jurisdiction.  The counterclaim would serve no useful purpose in clarifying the legal relations between the parties and, tellingly, Midwest Crane cannot articulate how the relief it seeks through the counterclaim is broader than its comparative fault

---

[23] *See Prograde Ammo Grp. LLC v. Perry*, No. 14-cv-00884-PAB-MEH, 2015 WL 1064266, at *3 (D. Colo. Mar. 9, 2015) (collecting cases).

[24] *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195 (D. Colo. 2018) (collecting cases).

[25] *Perry*, 2015 WL 1064266, at *3 (quoting *Ferrina B.V. v. Fera Pharm., LLC*, No. CV 13-4640 (SJF) (AKT), 2014 WL 4829053, at *6 (E.D.N.Y. Aug. 13, 2014)).

affirmative defense but for the inclusion of determining wrongful death liability—addressed separately below.  If Plaintiffs' negligence claim on property damage is dismissed, there would be no viable independent case or controversy remaining.  Thus, to the extent Midwest Crane seeks declaratory relief of nonliability relating to property damage caused by the crane collapse, the Court declines to exercise jurisdiction because such a claim is redundant of Plaintiffs' negligence claim and Midwest Crane's affirmative defense of comparative negligence.

### 3. Declaratory Relief as to Wrongful Death

#### a. Supplemental Jurisdiction

To the extent Midwest Crane's declaratory judgment counterclaim seeks to determine the rights and obligations of the parties with respect to liability or damages for wrongful death, Crossland argues first that the Court lacks an independent basis for jurisdiction because the amount in controversy does not exceed $75,000.  Midwest Crane responds that it asserts a compulsory counterclaim, therefore, the Court should exercise supplemental jurisdiction under 28 U.S.C. § 1367.

There is no dispute that the Court has jurisdiction over Crossland's original suit against Midwest Crane under 28 U.S.C. § 1332—the parties are diverse and Crossland asserts an amount in controversy in excess of $75,000.  Under § 1367(a), in addition to claims over which the Court has original jurisdiction, the Court may exercise supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . . ."  A claim is considered part of the same case or controversy if it "derive[s] from a common nucleus of operative fact."[26]  The Court finds that

---

[26] *Price v. Wolford*, 608 F.3d 698, 703 (10th Cir. 2010) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)).

Midwest Crane's declaratory judgment counterclaim derives from the same common nucleus of operative facts as Crossland's negligence claim over which this Court exercises diversity jurisdiction.  It therefore has an independent basis for jurisdiction over the counterclaim under 28 U.S.C. § 1367(a).

### b.       Discretionary Jurisdiction

Having found an independent basis for jurisdiction, the Court must next decide whether to exercise jurisdiction over the remaining declaratory judgment counterclaim by applying the *Mhoon* factors set forth above.

The first factor weighs in favor of Crossland.  There is a pending wrongful death action in Missouri state court that will settle the issue of whether Midwest Crane is liable for Jeffrey's death.  But Crossland is not a party to the wrongful death action, so the degree to which Crossland is at fault, if at all, will not be litigated in the wrongful death case unless Midwest Crane impleads Crossland, at which point the state court would be empowered to provide Midwest Crane the relief it seeks here.  Midwest Crane may also choose to file a separate action for contribution if judgment is entered against it in the wrongful death action.  Thus, Midwest Crane has identified no claims or defenses that would only be available to it in this federal court action, and a declaratory judgment would not settle this controversy because the wrongful death plaintiff is not a party to this action.[27]

As to the second factor, Crossland argues that a declaratory judgment would not clarify the legal relationships between the parties because the plaintiff in the wrongful death action is not a party in this case.  The wrongful death plaintiff therefore lacks notice and an opportunity to be heard on the issue.  The Court agrees that any declaratory judgment relating to the wrongful

---

[27] *See Ortiz v. Biscanin*, 190 F. Supp. 2d 1238, 1246 (D. Kan. 2002).

death of Jeffery would not clarify the legal relationships between the parties because the plaintiff is entirely missing from this lawsuit. Moreover, "it is not one of the purposes of the declaratory judgments acts to enable a prospective negligence action defendant to obtain a declaration of non-liability."[28] As Wright and Miller explain, while such an action may "reduce multiple litigation with a number of injured persons, this result should not outweigh the right of a personal-injury plaintiff to choose the forum and the time, if at all, to assert a claim."[29]

As to the third factor, Crossland asserts that Midwest Crane's counterclaim amounts to procedural fencing intended to gain an unfair advantage in the wrongful death action. The wrongful death action was already pending when Midwest Crane filed its counterclaim in this case. Crossland suggests that Midwest Crane seeks an adjudication of the comparative fault of these parties that would be res judicata in the wrongful death action. Midwest Crane argues that it did not choose to file suit in federal court; it is merely responding to Crossland's lawsuit. But Midwest Crane does not merely respond to Crossland's lawsuit, it asserts an affirmative counterclaim seeking to declare the rights of the parties as to *both* property damage and wrongful death. Given that the question of Midwest Crane's wrongful death liability is pending in a separate action, the Court agrees that this factor weighs in favor of Crossland.

The fourth factor addresses friction between the federal and state courts, or whether exercising jurisdiction would improperly encroach on the state court's jurisdiction. This factor

---

[28] *UNC Res., Inc. v. Benally*, 514 F. Supp. 358, 364 (D.N.M. 1981) (quoting *Frito-Lay v. Dent*, 373 F. Supp. 771, 773–74 (N.D. Miss. 1974)).

[29] 10B Charles Alan Wright, et al., Fed. Practice and Procedure Civil § 2754, Westlaw (database updated Apr. 2020); *see also S. Ins. Co. v. Bennett*, 680 F. Supp. 387, 389 (M.D. Ga. 1988) ("a claim based upon negligent or intentional acts is not one appropriate for a decision in a declaratory judgment action."); *Certain Underwriters at Lloyd's London v. A&D Interests, Inc.*, 197 F. Supp. 2d 741, 750 (S.D. Tex. 2002) ("The principal justification for this rule is that it would be a perversion of the Declaratory Judgment Act to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the apparent tortfeasor." (citing *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir. 1969))).

weighs decidedly in favor of Crossland.  Crossland maintains that it is immune from suit for tort claims under both Kansas and Missouri workers' compensation statutes because it was Jeffrey's statutory employer.  Midwest Crane asks the Court to find that Crossland is estopped from asserting workers' compensation immunity.  Deciding that issue would cause substantial friction with the state court because the immunity defense pertains to a nonparty to this action—the wrongful death plaintiff.  The state court should decide that issue in the first instance.  Moreover, the parties disagree about whether Kansas or Missouri law governs the comparative fault of these parties.  Crossland urges that Kansas law governs the issue; Midwest Crane argues that Missouri law controls because the underlying wrongful death claim arises under Missouri law. Notwithstanding the fact that Midwest Crane apparently argues the opposite position in the wrongful death case,[30] resolving choice-of-law for purposes of the underlying wrongful death case would improperly encroach on a matter within the state court's province to decide in the first instance, and would cause friction if the state court makes a different determination.

For all of these reasons, the Court finds that the *Mhoon* factors counsel against this Court exercising jurisdiction over Midwest Crane's declaratory judgment counterclaim.  Crossland's motion to dismiss the declaratory judgment counterclaim without prejudice is therefore granted.

### B.    Indemnity and Contribution Counterclaim

Midwest Crane's second counterclaim asserts that "in the event Midwest Crane is compelled to pay damages, including damages that are attributable to Crossland Heavy, notwithstanding Midwest Crane's denial, then Crossland Heavy is liable to Midwest Crane for any and all damages caused or contributed to by Crossland Heavy's negligence and breaches."[31]

---

[30] *See* Doc. 92-1.

[31] Doc. 48 ¶ 53.

Crossland moves for dismissal because the claim is not ripe for decision, not legally cognizable, or, in the alternative, because Crossland is immune from liability under either Kansas or Missouri workers' compensation laws.  The parties dispute whether Kansas or Missouri law governs this counterclaim to the extent it seeks contribution and indemnity for wrongful death damages.  The Court need not resolve this issue because under both Kansas and Missouri law, the counterclaim must be dismissed.[32]

### 1.    Kansas Law

Under Kansas law, the doctrine of contribution was abolished when comparative fault was adopted, therefore no cause of action for contribution arises under Kansas law.[33]  Likewise, "to the extent [Midwest Crane] is arguing it is entitled to indemnification due to any imbalance in the parties' proportionate fault, such a claim is contrary to Kansas law."[34]  The parties' proportionate fault must be determined under principals of comparative fault.  As to property damages, proportionate fault will be determined based on Midwest Crane's comparative fault affirmative defense.  Therefore, Midwest Crane does not have a legally cognizable claim for contribution under Kansas law for either property or wrongful death damages.  Further, Midwest Crane does not have a legally cognizable claim for indemnification on the basis of proportionate fault.

The parties dispute whether Midwest Crane plausibly alleges a claim for implied indemnification under Kansas law.  An implied indemnity claim may arise "when one is compelled to pay what another party ought to pay.  The implied or constructive liability usually

---

[32] Accordingly, the Court need not determine whether judicial estoppel prevents Crossland from asserting that Missouri law governs the wrongful death claim based on a contrary filing in that case.

[33] *See, e.g., Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1266 (D. Kan. 2002) (citing *Wilson v. Probst*, 581 P.2d 380, 384 (Kan. 1978)).

[34] *Id.* at 1266–67 (footnote omitted).

arises when one personally, without fault, is made to pay for a tortious act of another.  The person paying has a right of action against the person at fault."[35]  The Court finds that Midwest Crane fails to plausibly allege an implied indemnity claim because the facts alleged demonstrate that Midwest Crane has not been compelled to pay in the wrongful death action what Crossland ought to pay.  No finding of liability or damages has been made in that case.  Of course, if Midwest Crane is found not liable, it will have no cause of action against any third party for indemnification.  Therefore, assuming an implied indemnity claim is otherwise available to Midwest Crane, it is not ripe.

If Kansas law applies, the Court finds that Midwest Crane fails to state a plausible claim for relief against Crossland on a theory of contribution and its implied indemnity claim is not ripe.

### 2.    Missouri Law

Under Missouri law, an indemnity or contribution claim "by a defendant who is held liable to a plaintiff really is not ripe until the defendant has suffered a judgment.  At that point, the defendant would be permitted to bring an independent action against a co-defendant for indemnity or contribution."[36]  An exception is that under the "cross-claim rule," such claims may be brought in the same lawsuit as the *plaintiff's claim* against the "original defendants" in the form of a cross-claim or a third-party claim under Missouri Rule 52.11 or Fed. R. Civ. P. 14.[37]  In Missouri state court, such claims brought in the same lawsuit are permissive, not compulsory, claims.[38]

---

[35] *Hartford Fire Ins. Co. v. P&H Cattle Co.*, No. 05-2001-DJW, 2006 WL 2135189, at *3 (D. Kan. July 28, 2006) (quoting *Haysville U.S.D. No. 261 v. GAF Corp.*, 666 P.2d 192, 199 (Kan. 1983)) (footnote omitted).

[36] *Hemme v. Bharti*, 183 S.W.3d 593, 598 (Mo. 2006) (en banc).

[37] *Id.* at 599.

[38] *Id.*

Here, Midwest Crane did not wait for a wrongful death judgment to assert a claim of indemnification or contribution against Crossland.  Missouri law permits but does not require Midwest Crane to implead Crossland and assert its contribution and indemnity claim in the wrongful death case.  Alternatively, it can file a separate action for contribution and indemnity if and when a judgment is rendered.  Instead, Midwest Crane seeks contribution and indemnity as to *both* property damages and wrongful death as a counterclaim in this case only.  The Court acknowledges that the trend in federal court cases is to permit counterclaims for contribution "to facilitate the litigation of *all* claims arising from the same occurrences in the same lawsuit," rather than wait for the underlying lawsuit to conclude.[39]  But the rationale for this rule is missing here because this case does not include all claims arising from the crane accident.[40]  It only includes a claim for property damage brought by the owner of the crane and its insurer.  Notably, the wrongful death plaintiff is missing from this action.  Therefore, Midwest Crane's contribution and indemnity counterclaim is not a compulsory counterclaim, as Midwest Crane suggests.[41]

Moreover, allowing this counterclaim to proceed without the wrongful death plaintiff would run into due process concerns.  In order for there to be a right to contribution under Missouri law, the wrongful death plaintiff must have "a cause of action against the person from whom contribution is sought."[42]  Crossland argues that workers' compensation immunity shields

---

[39] *Dejana v. Marine Tech., Inc.*, No. 4:11-cv-1690-JAR, 2013 WL 1282327, at *2 (E.D. Mo. Mar. 26, 2013) (collecting cases) (emphasis added).

[40] *See id.* at *2–3; *Oneida Indian Nation of N.Y. v. New York*, 194 F. Supp. 2d 104, 143 n.47 (N.D.N.Y. 2002).

[41] A counterclaim is compulsory if it arises out of the same "transaction or occurrence" as the primary claim, *and* "does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a)(1).

[42] *Gragg's Paint Co. of Kan. City, Inc. v. Polyspec, L.P.*, No. 04-0286-CV-W-FJG, 2005 WL 8159069, at *4 (W.D. Mo. Sept. 12, 2005) (quoting *Sweet v. Herman Bros.*, 688 S.W.2d 31, 32–33 (Mo. Ct. App. 1985)).

it from liability for Jeffrey's wrongful death, therefore there can be no cause of action against Crossland that would allow for contribution.[43]  Moreover, under Missouri law, a contribution defendant may litigate both liability and amount of damages, even after a judgment is entered in the underlying case.[44]  The wrongful death plaintiff should be provided with notice and an opportunity to respond in the absence of a liability finding or  judgment.[45]

If Missouri law applies, the Court agrees with Crossland that Midwest Crane's contribution and indemnity claim is not ripe for decision and therefore must be dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Crossland's Motion to Dismiss Midwest Crane Repair, LLC's Counterclaims (Doc. 70) is **granted**.

**IT IS SO ORDERED.**

Dated: September 14, 2020

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> CHIEF UNITED STATES DISTRICT JUDGE

---

[43] *See Sweet*, 688 S.W.2d at 32; *Missouri ex rel. Md. Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489, 490 (Mo. 1979) (en banc).

[44] *See Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727, 732 (Mo. 1982) (en banc).  If there is a judgment in the wrongful death action against Midwest Crane, it would be able to recover no more than the amount of the judgment from Crossland in a separate contribution and indemnity action.  *Id.* at 732 & n.7.

[45] *Cf. Ferrellgas, L.P. v. Williamson*, 24 S.W.3d 171, 177 (Mo. Ct. App. 2000) (explaining contribution defendant has a due process right to litigate its liability).